846 N.E.2d 752 (2006)
In re the PATERNITY OF P.W.J.
Phillip William Gray, Appellant-Respondent,
v.
Linda Sue Schachel, Appellee-Petitioner.
No. 49A02-0509-JV-861.
Court of Appeals of Indiana.
May 5, 2006.
*754 Phillip Gray, Indianapolis, Appellant Pro Se.
Frances H. Barrow, Deputy Attorney General, Office of Attorney General, David Morris, Office of Prosecuting Attorney, Indianapolis, for Appellee.

OPINION
BAILEY, Judge.

Case Summary
Appellant-Respondent Phillip William Gray ("Gray"), pro se, appeals the trial court's award of $2,646.65 in child support arrearage to Appellee-Petitioner Linda Sue Schachel ("Schachel"). In part, Gray contests the trial court's determination that his son, P.W.J., was emancipated at the age of eighteen, as opposed to sixteen. The Title IV-D Prosecutor (the "State"),[1] *755 on behalf of Schachel, cross-appeals, challenging the trial court's finding that P.W.J. was emancipated at the age of eighteen  rather than twenty-one  without first allowing the State to present additional evidence or assert the claim of laches. We affirm in part and reverse and remand in part.

Issues
On appeal, Gray raises five issues, which we consolidate and restate as:
I. Whether he was denied procedural due process when the trial court, at the request of the State, enforced the wage assignment or income withholding order without conducting an administrative hearing, pursuant to Indiana Code Section 31-16-15-7;
II. Whether the trial court abused its discretion by excluding the affidavit of P.W.J., which was typed and unsigned;
III. Whether the trial court abused its discretion when it calculated Gray's child support arrearage to be $2,646.65 because:
a. Gray's support obligation terminated upon P.W.J.'s emancipation, which allegedly occurred in January of 1993; and
b. The trial court failed to credit Gray for the time that P.W.J. purportedly lived with him; and
IV. Whether the trial court abused its discretion by refusing to award Gray damages against the State in an amount exceeding $555,000.
On cross-appeal, the State challenges the trial court's calculation of Gray's child support arrearage inasmuch as the evidence is insufficient to support the emancipation of P.W.J. at the age of eighteen.

Facts and Procedural History

I. Background: The Paternity Proceeding
On August 3, 1981, Schachel filed a petition to establish paternity, naming Gray as the alleged father of P.W.J., born on November 23, 1976. On June 17, 1982, genetic testing indicated a 98.89% probability that Gray fathered P.W.J. On June 21, 1982, the trial court found Gray to be the father of P.W.J., awarded custody to Schachel, and ordered Gray to pay child support in the weekly amount of $25.00, beginning July 2, 1982. On March 11, 1983, the trial court modified Gray's child support obligation to $20.00 per week and issued a wage assignment.
Subsequently, on September 2, 1984, Schachel filed a contempt petition, alleging that Gray had only "paid a total of $20.00 in child support since the judgment date." Appellee's App. at 24. On May 24, 1985, after conducting a hearing, the trial court found Gray to be in arrears on his child support obligation in the amount of $3,035.00. As a consequence, the trial court sentenced Gray to a suspended term of thirty days and ordered him to "pay something every week or do jail time." Id. at 2 (emphasis in original). The trial court also ordered Gray "to make an assignment of wages for the benefit of his minor children pursuant to Indiana Code Section 31-1-11.5-13(e)."[2]Id. at 30.

*756 II. Commencement of the Present Proceedings for Child Support Arrearage

On November 1, 2004, Gray, acting pro se, filed a motion for child support accounting, which provides, in pertinent part:
2.) [Schachel,] mother of [P.W.J.,] transferred custody of [P.W.J.] on August 20, 1991 (see attached Power of Attorney) thereby causing child support to terminate.
3.) At the age of 17, August 23, 1993, [P.W.J.] was no longer in school and self-supporting, thereby making him emancipated.
Id. at 31. On November 12, 2004, the State, on behalf of Schachel, filed a petition to determine arrearage and for entry of interest and judgment lien. On January 10, 2005, the trial court, via Commissioner J. Paul Palguta, conducted a hearing on the cross motions. The trial court did not receive any testamentary evidence, but rather accepted documentary evidence and heard arguments from counsel, including Gray, pro se. At the hearing, Gray argued that P.W.J. resided with him from age sixteen through eighteen and, further, that when P.W.J. turned eighteen, "he was not in school, and he was working for himself, and was living on his own." Jan. 10, 2005 Tr. at 13. In response, the deputy prosecutor asserted:
. . . Secondly, certainly he is now claiming; while the child is 28; that the child should have been emancipated way back when. As the [trial court] said, that is water under the bridge and laches certainly should prevent him from making that claim. Thirdly, with regard to the guardianship. There was never a change of custody. What there was [sic] a Power of Attorney with regard to school, and I think medical decisions. That is not a change of custody. . . . Fourthly, if what he is arguing is that he had custody of that child between sixteen and eighteen, certainly he shouldn't get credit for Social Security payments made to the mother for a child he now claims he had custody of. He wants to double dip.
Id. at 15.
On June 14, 2005, the trial court found Gray to be in arrears on his child support payments in the amount of $5,766.65 as of April 8, 2005, and ordered an income withholding to any income payor, including the Social Security Administration, until such arrearage is liquidated in full. On June 17, 2005, Gray filed a "Motion to Set Aside the Court Order of June 14th, 2005" and a "Motion for Review by the Judge of the Court." Appellee's App. at 89-92. Subsequently, both Gray and the State filed motions to correct error. On July 21, 2005, the trial court, via Judge Theodore Sosin, conducted a hearing on the June 17th motion, which it construed as a motion to reconsider, as well as the cross-motions to correct error. In so doing, the trial court clarified that the parties "are not presenting evidence today, but rather arguing whether or not the evidence that was received by the Court is sufficient to support the ruling." July 21, 2005 Tr. at 3.
Thereafter, on August 22, 2005, the trial court entered an order, finding that P.W.J. was emancipated on his eighteenth birthday and reducing Gray's child support arrearage to $2,646.65. It is from this latter order that the parties now appeal.

*757 Discussion and Decision

A. Right to an Administrative Hearing
On appeal, Gray first argues that the State's failure to comply with the hearing requirement of Indiana Code Section 31-16-15-7(b)(8) violated his due process rights. The Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit any state action that deprives a person of life, liberty, or property without a fair proceeding. See U.S. CONST. amend. XIV; see also IND. CONST. art. 1, § 12.
In recognition of an obligor's due process rights, Indiana Code Section 31-16-15-7 requires a Title IV-D agency, such as the State in this case, which intends to implement an income withholding order, to send written notice to the obligor. Such notice must contain a statement of the following:
(7) That an obligor may contest the Title IV-D agency's determination to activate income withholding by making written application to the Title IV-D agency not later than twenty (20) days after the date the notice is mailed.
(8) That if the obligor contests the Title IV-D agency's determination to activate the income withholding order, the Title IV-D agency shall schedule an administrative hearing.
In his appellant's brief, Gray appears to contend that his due process rights were violated when the trial court entered the January 10, 2005 order because the State had not complied with the administrative hearing requirement of Indiana Code Section 31-16-15-7. In so arguing, Gray acknowledges that a wage assignment was ordered on March 11, 1983 and, again, on May 24, 1985. However, he asserts that the income withholding order terminated or became inactive when Schachel and P.W.J. moved to Florida. See, e.g., Ind. Code § 31-16-15-22(b) ("Activation of income withholding terminates when the whereabouts of the child and the child's custodial parent are unknown, preventing the forwarding of child support payments.").
Apart from his trial argument that, at some point, Schachel moved to Florida and the State was unable to locate her, Gray has failed to present any evidence that Schachel's whereabouts were unknown such that the State was unable to forward the child support payments. Because Gray has failed to demonstrate that the income withholding order terminated or became inactive, the procedural notice requirements of Indiana Code Section 31-16-15-7 are inapplicable to the case at bar. As a consequence, Gray has failed to demonstrate that his due process rights were violated.

B. Admission of P.W.J.'s Affidavit
Next, Gray contends that the trial court abused its discretion by excluding the affidavit of P.W.J. The admission of evidence is entrusted to the sound discretion of the trial court. Thurman v. Thurman, 777 N.E.2d 41, 43 (Ind.Ct.App.2002). We will find an abuse of discretion only where the trial court's decision is against the logic and effect of the facts and circumstances before the court. Id.
Here, the affidavit in question is typewritten and unsigned. While P.W.J. is the alleged affiant, anyone including Gray could have typed the affidavit and, thus, it does not constitute competent evidence under Indiana Trial Rule 11.[3]See, e.g., *758 Brewster v. State, 697 N.E.2d 95, 96 (Ind. Ct.App.1998) (holding that the affidavits submitted by a criminal defendant, which were not signed, do not constitute admissible evidence). Rather, under Rule 11, the unverified affidavit would require "other or greater proof on the part of the adverse party." Gray failed to provide such other or greater proof and, thus, the trial court did not abuse its discretion by excluding P.W.J.'s affidavit.

C. Child Support Arrearage
Gray also challenges the trial court's order finding a child support arrearage of $2,646.65. Decisions regarding child support generally rest within the sound discretion of the trial court. Smith v. Smith, 793 N.E.2d 282, 284 (Ind.Ct.App. 2003). We will reverse such a determination only if there has been an abuse of discretion or the decision is contrary to law. Id.
In the case at bar, Gray contests the arrearage amount for two reasons. First, he asserts that P.W.J. was emancipated at the age of sixteen, rather than eighteen. Second, he contends that the trial court failed to credit him for the time P.W.J. resided with him. We separately address each contention.

1. Emancipation
It is well settled that the duty to support a child terminates upon a child's emancipation. Indiana Code Section 31-16-6-6 governs the emancipation of minors, and provides, in pertinent part:
(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:
(1) The child is emancipated before becoming twenty-one (21) years of age. . . .
(2) The child is incapacitated. . . .
(3) The child:
(A) is at least eighteen (18) years of age;
(B) has not attended a secondary or postsecondary school for the prior four (4) months and is not enrolled in a secondary or postsecondary school; and
(C) is or is capable of supporting himself or herself through employment.
In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

*759 (b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:
(1) has joined the United States armed services;
(2) has married; or
(3) is not under the care or control of:
(A) either parent; or
(B) an individual or agency approved by the court;
the court shall find the child emancipated and terminate the child support.
What constitutes emancipation is a question of law, but whether there has been an emancipation is a question of fact. Young v. Young, 654 N.E.2d 880, 883 (Ind. Ct.App.1995), reh'g denied, trans. denied. Emancipation cannot be presumed, but must be established by competent evidence. Id. The petitioner seeking emancipation has the burden of proving that the child is emancipated. Id.
At trial, Gray argued that P.W.J. was emancipated when he turned eighteen. On appeal, however, he contends that the emancipation occurred in January of 1993, when P.W.J. was sixteen. Specifically, in his appellant's brief, Gray maintains: "The Appellant has established, by his own testimony and the Affidavit of [P.W.J.] . . . that [P.W.J.] meet [sic] the [c]riteria for [e]mancipation" as enunciated in Indiana Code Section 31-16-6-6(a)(3)(A-C). Appellant's Br. At 11. The record reveals, however, that Gray presented no evidence at trial regarding P.W.J.'s early emancipation. Rather, the trial court merely heard argument from Gray that: (1) P.W.J. resided with him between the ages of sixteen and eighteen; (2) P.W.J. got into legal trouble while he was living or staying with Schachel and was ordered to Camp Atterbury sometime between 1994 and 1997;[4] and (3) when P.W.J. turned eighteen, he was not in school, was working for himself, and was living on his own. These arguments, which are facially inconsistent,[5] do not constitute competent evidence sufficient to prove that P.W.J. was emancipated prior to his eighteenth birthday.[6]
The State cross-appeals the trial court's determination that P.W.J. was emancipated at the age of eighteen, as opposed to twenty-one, contending that the doctrine of laches precludes Gray from arguing an early emancipation date. "Laches is neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done." Knaus v. York, 586 N.E.2d 909, 914 (Ind.Ct.App.1992). In addition, "there must be unreasonable delay and prejudice to the opposing party." Id. In general, the doctrine of laches does not apply to child support cases. See, e.g., Trent v. Trent, 829 N.E.2d 81, 87 (Ind.Ct. App.2005) (noting that laches does not apply to an action to recover a child support arrearage). This is so because Indiana courts will not penalize a child for his or her parent's delay in pursuing child support. See, e.g., Connell v. Welty, 725 N.E.2d 502, 506 (Ind.Ct.App.2000); see also In re Truax, 522 N.E.2d 402, 407 (Ind.Ct.App.1988), trans. denied.
*760 However, the policy behind the general rule that laches will not bar a parent from collecting child support is not implicated on these facts, where a father attempts to emancipate a child merely to reduce the amount of child support arrearage that he owes to that child. Here, the record demonstrates that approximately seven years after P.W.J. was statutorily emancipated, and approximately ten years after P.W.J. was allegedly emancipated, Gray sought to reduce his child support obligation or arrearage by arguing emancipation. Because the trial court did not consider any evidence, or argument for that matter, regarding whether Schachel was prejudiced by the unreasonable delay, we remand for the trial court to conduct a hearing and determine if Gray's contention that P.W.J. was emancipated prior to the age of twenty-one is barred by laches.

2. Credit
Further, Gray argues that he is entitled to credit for the three-year period that P.W.J. allegedly resided with him. In general, "an obligated parent will not be allowed credit for payments not conforming to the support order." O'Neil v. O'Neil, 535 N.E.2d 523, 524 (Ind.1989). However, there are exceptions to the general rule. See In re Marriage of Baker, 550 N.E.2d 82, 87 (Ind.Ct.App.1990). In DeMichieli v. DeMichieli, 585 N.E.2d 297, 302 (Ind.Ct.App.1992), disapproved of on other grounds by Pettit v. Pettit, 626 N.E.2d 444 (Ind.1993), for example, another panel of this Court held that a credit will be allowed:
Where the obligated parent by agreement has taken the children in his or her home, assumed custody of them, provided them with necessities, and has exercised parental control over their activities for such an extended period of time that a permanent change of custody has in effect occurred.
Id.; see also Isler v. Isler, 425 N.E.2d 667, 670 (Ind.Ct.App.1981). This Court has also recognized that the conduct of the parties may create an agreement by implication, i.e., an implied contract, with respect to a custodial agreement in the absence of a written contract. Smith, 793 N.E.2d at 285. An implied contract is equally as binding as an express contract. Id. (citations omitted).
Turning to the circumstances here, Gray has failed to prove the existence of an express or implied contract between himself and Schachel regarding the custodial arrangement for P.W.J. Again, apart from self-serving arguments made by Gray, the record is devoid of any evidence of such an agreement. See, e.g., Naggatz v. Beckwith, 809 N.E.2d 899, 905 (Ind.Ct.App. 2004) (Bailey, J., dissenting), trans. denied; see also Kuester v. Inman, 758 N.E.2d 96, 100 (Ind.Ct.App.2001) (differentiating between evidence and argument of counsel).
Moreover, the arguments presented by Gray are conflicting. At times, for example, he argued that P.W.J. resided with him until the age of eighteen. Later, however, he admitted that, in 1994, he got arrested while living with his mother. At other times, Gray argued that P.W.J. was emancipated at the age of sixteen. Because Gray failed to demonstrate a change in the custodial arrangement, he was not entitled to credit against the arrearage in child support. Accordingly, the trial court did not err by refusing to give Gray a credit.

D. Damages
Lastly, Gray argues that the trial court erred by not awarding him damages in the amount of "$555,000+." Appellant's Br. at 14. However, Gray has failed to support his argument with cogent reasoning *761 as required by Indiana Appellate Rule 46(A)(8)(a).[7] Therefore, Gray has waived his contention regarding damages on appeal. See, e.g., Flowers v. Flowers, 799 N.E.2d 1183, 1187 (Ind.Ct.App.2003).[8]
For the foregoing reasons, we reverse the trial court's finding that P.W.J. was emancipated at the age of eighteen, as well as its determination that Gray is in arrears in child support in the amount of $2,646.65. We remand for the trial court to conduct a hearing regarding whether Gray is barred by the doctrine of laches from arguing that P.W.J. was emancipated prior to the age of twenty-one. In all other respects, we affirm the trial court.
Affirmed in part, reversed and remanded in part.
KIRSCH, C.J., and CRONE, J., concur.
NOTES
[1] The Title IV-D Prosecutor is the state agency responsible for administering Title IV-D of the federal Social Security Act. Indiana Code Section 12-14-7-1 provides:

If an applicant for assistance is entitled to child support or spousal support, the applicant shall, to be eligible for assistance and in compliance with federal regulations, assign the right to:
(1) accrued;
(2) present; and
(3) pending support;
payments to the state agency responsible for administering Title IV-D of the federal Social Security Act.
[2] That statute, which has now been repealed, provided in pertinent part:

(e) Upon application to the court for enforcement of an order for support, the court may:
* * * * *
(2) Order the person obligated to pay support to make an assignment of his or her wages or salary to the person entitled to receive the payments. An employer shall accept such assignment and shall not discharge or otherwise discipline the employee as a result of a wage or salary assignment made under such court order. The employer shall cause the payments made under the wage or salary assignment to be paid with the same frequency as wages or salary is paid to the employee or at any other frequency ordered by the court.
See Bowmar Instrument Corp. v. Maag, 442 N.E.2d 729, 731 (Ind.Ct.App.1982).
[3] Rule 11 provides:

Verified pleadings, motions, and affidavits as evidence. Pleadings, motions and affidavits accompanying or in support of such pleadings or motions when required to be verified or under oath shall be accepted as a representation that the signer had personal knowledge thereof or reasonable cause to believe the existence of the facts or matters stated or alleged therein; and, if otherwise competent or acceptable as evidence, may be admitted as evidence of the facts or matters stated or alleged therein when it is so provided in these rules, by statute or other law, or to the extent the writing or signature expressly purports to be made upon the signer's personal knowledge. When such pleadings, motions and affidavits are verified or under oath they shall not require other or greater proof on the part of the adverse party than if not verified or not under oath unless expressly provided otherwise by these rules, statute or other law. Affidavits upon motions for summary judgment under Rule 56 and in denial of execution under Rule 9.2 shall be made upon personal knowledge.
[4] The record is unclear regarding the date at which P.W.J. was allegedly ordered to Camp Atterbury.
[5] In particular, because his parents were living separately, P.W.J. could not have simultaneously resided with both Schachel and Gray at or near the age of eighteen. In addition, if P.W.J. was ordered to Camp Atterbury in 1994, it is unlikely that he was also working for himself and living on his own at that time.
[6] Because Gray has failed to demonstrate an early emancipation, we do not need to address his statute of limitations claim.
[7] Appellate Rule 46(A)(8)(a) provides: "The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22."
[8] Moreover, we note that Indiana Code Section 31-16-11-2 exempts the Title IV-D agency and its prosecutors from awards of costs and attorney fees against them. See, e.g., Flowers v. Flowers, 799 N.E.2d 1183, 1194 (Ind.Ct.App.2003).